UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

JAMES A. HARNAGE,                    :
        Plaintiff,                   :
                                     :
        v.                           :    Civil No. 3:17-cv-263(AWT)
                                     :
RIKEL LIGHTNER, et al.,              :
        Defendants.                  :

**RULING ON MOTION FOR SUMMARY JUDGMENT [ECF No. 63]**

The plaintiff, James A. Harnage, commenced this civil

rights action pro se.  The remaining named defendants are:

Health Services Administrator ("H.S.A.") Rikel Lightner,

Physician's Assistant ("P.A.") Kevin McCrystal,[1] and Dr.

Omprekash Pillai.  The only remaining claim is an Eighth

Amendment claim for deliberate indifference to serious medical

needs relating to treatment of the plaintiff's hernia prior to

surgery.[2]  The defendants have filed a motion for summary

judgment.  For the reasons that follow, that motion is granted

except with respect to the claim against Dr. Pillai.

I.   **LEGAL STANDARD**

A motion for summary judgment may be granted only where

---

[1] The plaintiff incorrectly spells defendant McCrystal's last
name as "McChrystal".  The court will use the correct spelling.

[2] The court dismissed the claims against all other defendants in
the Initial Review Order directed to the claims in the First Amended
Complaint.  See ECF No. 24.

there are no issues of material fact in dispute and the moving party is therefore entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P.; Redd v. New York Div. of Parole, 678 F.3d 166, 173-74 (2d Cir. 2012).  "When the nonmoving party will bear the burden of proof at trial, the moving party can satisfy its burden at summary judgment by 'pointing out to the district court' the absence of a genuine dispute with respect to any essential element of its opponent's case: 'a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'"  Cohane v. National Collegiate Athletic Ass'n, 612 F. App'x 41, 43 (2d Cir. 2015) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  He cannot "'rely on conclusory allegations or unsubstantiated speculation' but 'must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact.'"  Robinson v. Concentra Health Servs., 781 F.3d 42, 34 (2d Cir. 2015) (citation omitted).  He must present such evidence as would allow a jury to find in his favor in order to defeat the motion for summary judgment.  See Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

Although the court reads pro se papers liberally and interprets them to raise the strongest arguments they suggest, Willey v. Kirkpatrick, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and are insufficient to oppose a properly supported motion for summary judgment.  Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).

II.  **FACTS**[3]

The plaintiff was transferred to MacDougall-Walker Correctional Institution ("MacDougall") on August 2, 2012.  He began experiencing constipation between August and October of 2012, and informed medical staff at MacDougall of his condition. The plaintiff was not satisfied with the response from medical staff.

The plaintiff concluded, through self-diagnosis, that the strain of moving his bowels during the period of constipation caused him to develop hemorrhoids and an abdominal hernia.  The plaintiff was seen by multiple medical staff members for his various medical complaints, including P.A. McCrystal, Dr. Pillai and Dr. O'Halloran.  The plaintiff denies that any staff member examined his abdomen or diagnosed a hernia.

---

[3] The facts are taken from the defendants' Local Rule 56(a) Statements and exhibits.

During the relevant period, P.A. McCrystal worked primarily
in the chronic disease care program at MacDougall.  The
plaintiff saw P.A. McCrystal in the chronic care clinic to
monitor his diabetes.  The plaintiff told P.A. McCrystal that he
was having problems with his abdomen.  P.A. McCrystal told the
plaintiff that he was seeing the plaintiff only for his diabetes
and said the plaintiff should address his abdominal complaints
with the doctor.  The plaintiff knows that P.A. McCrystal is not
a doctor or surgeon and does not know what treatment P.A.
McCrystal can provide.

Dr. Pillai practiced medicine at MacDougall during the
relevant period.  The plaintiff estimates that he saw Dr. Pillai
between 12 and 15 times during the three-year period from the
end of 2012 through 2015.  The plaintiff has had the most
contact with Dr. Pillai.  The parties disagree whether Dr.
Pillai provided treatment for the plaintiff's hernia.  In July
2013, Dr. O'Halloran provided the plaintiff an abdominal wrap or
binder.

On April 25, 2014, Dr. Pillai submitted a request to the
Utilization Review Committee ("URC") for a surgical consult for
the plaintiff.  Such a consultation cannot occur without URC
approval.  Dr. Wu, a URC member, denied the request.  A few days
later, Dr. Pillai assisted the plaintiff in appealing the
denial.  Dr. Mauer, another URC member, approved the request on

appeal and the plaintiff was scheduled for a surgical consult.

The consult with surgeon Dr. David Giles occurred in July 2014. Dr. Giles later performed surgery on the plaintiff's abdominal hernia and his hemorrhoids. The hemorrhoidectomy occurred in October 2014, and the hernia surgery in September 2015. Dr. Giles determined that the hemorrhoidectomy was a priority and scheduled the order of the procedures.

H.S.A. Lightner was not the director of health services. She did not practice medicine and did not treat patients. She did not supervise the URC and could not approve surgeries or surgical consultations.

## III. **DISCUSSION**

The defendants move for summary judgment on four grounds: (1) any claims based on conduct occurring before May 2, 2013, are barred by the statute of limitations; (2) the defendants were not deliberately indifferent to the plaintiff's medical needs; (3) even if the plaintiff's constitutional rights were violated, the defendants are protected by qualified immunity; and (4) the request for injunctive relief should be dismissed.

### A. **Statute of Limitations**

The defendants first argue that some of the plaintiff's claims are time-barred. In Connecticut, the applicable statute of limitations for a claim under 42 U.S.C. § 1983 is found in Conn. Gen. Stat. § 52-577, which provides that "[n]o action

5

founded upon a tort shall be brought but within three years from the date of the act or omission complained of." <u>Lounsbury v. Jefferies</u>, 25 F.3d 131, 133 (2d Cir. 1994).

The plaintiff first referenced these claims in <u>Harnage v. Woo</u>, No. 3:16-cv-675(AWT), filed on May 2, 2016. The court dismissed <u>Harnage v. Woo</u> for improper joinder of claims and afforded the plaintiff an opportunity to refile his claims in separate cases. <u>See Harnage v. Woo</u>, <u>id.</u> (Initial Review Order, ECF No. 8, filed September 1, 2016, at 11-13). The plaintiff filed this action in response to that order. Thus, although the court assumed that the plaintiff would immediately file the separate actions as directed and not wait over five months to do so, the court liberally construes the limitations period to commence on May 2, 2013, three years before the plaintiff filed the prior action. <u>See Harnage v. Giles</u>, No. 3:17-cv-285(AWT) (D. Conn.) (Ruling on Motion to Dismiss, ECF No. 8, at 7-8) (similarly extending limitations period).

The plaintiff stated in his deposition that he first noticed the hernia in October 2012, when it appeared as a small blister on his skin. Deposition Tr., Pl.'s Mem. Ex. 2A, ECF No. 117-3 at 46. He states in his affidavit, however, that he first noticed the hernia in May 2013. Pl.'s Aff., ECF No. 117-2, ¶ 26. As the plaintiff has submitted no objective evidence showing that he sought treatment for the hernia prior to May

2013, the court considers the plaintiff's claims as falling within the limitations period.  Therefore, the request to dismiss any claims as time-barred is being denied.

**B.  Deliberate Indifference to a Serious Medical Need**

The defendants argue that the plaintiff has not demonstrated the existence of a genuine issue of material fact as to whether they were deliberately indifferent to his hernia.

The Supreme Court has held that deliberate indifference to a convicted prisoner's serious medical needs can constitute cruel and unusual punishment in violation of the Eighth Amendment.  See Estelle v. Gamble, 429 U.S. 97, 104 (1976).  A claim of deliberate indifference to serious medical needs has both an objective and a subjective component.  See Salahuddin v. Goord, 467 F.3d 263, 279-80 (2d Cir. 2006).

Under the objective component of the test, the alleged deprivation of medical care must be "sufficiently serious."  See Spavone v. New York State Dep't of Corr. Servs., 719 F.3d 127, 138 (2d Cir. 2013) (quoting Salahuddin, 467 F.3d at 279).  A "sufficiently serious" deprivation can exist if the plaintiff suffers from an urgent medical condition that can cause death, degeneration, or extreme or chronic pain and that significantly affects daily activities.  See Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003); Chance v. Armstrong, 143 F.3d 698, 702, 703 (2d Cir. 1998).

A medical condition may not be serious initially, but may become serious because it is degenerative and, if left untreated or neglected for a long period of time, will "result in further significant injury or the unnecessary and wanton infliction of pain." Harrison v. Barkley, 219 F.3d 132, 136-37 (2d Cir. 2000). The Second Circuit has identified several factors that are "highly relevant" to the question of whether a medical condition is sufficiently serious, including "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).

Where, as here, the plaintiff complains about a delay in treatment, the court must focus on the effect of the delay rather than the underlying medical condition. See Smith v. Carpenter, 316 F.3d 178, 186 (2d Cir. 2003); see also Cruz-Droz v. Marquis, No. 3:17-cv-1291(MPS), 2018 WL 1368907, at *4 (D. Conn. Mar. 16, 2018) (if claim is for temporary delay in otherwise adequate treatment, court focuses on delay rather than underlying medical need). The Second Circuit has held that a delay in treatment constitutes deliberate indifference where prison officials "ignored a life-threatening and fast-degenerating" condition for three days, Liscio v. Warren, 901

F.2d 274, 277 (2d Cir. 1990), or delayed needed major surgery for over two years.  Hathaway v. Coughlin, 841 F.2d 48, 50-51 (2d Cir. 1988).  The court considers the reason for the delay and whether the delay worsened the prisoner's condition.  Smith, 316 F.3d at 187.  "[I]n most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm."  Id. (citations omitted).

The subjective component requires that the defendant prison official must have been actually aware of a substantial risk that the plaintiff would suffer serious harm as a result of his or her actions or inactions and have disregarded that risk.  See Salahuddin, 467 F.3d at 2799-80.  The fact that a prison official or employee "failed to alleviate a significant risk that he should have perceived, but did not" does not constitute deliberate indifference.  See Farmer v. Brennan, 511 U.S. 825, 838 (1994).

A showing of negligence or medical malpractice does not support an Eighth Amendment claim, unless it involves culpable recklessness.  See Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003).  Thus, "not every lapse in prison medical care will rise to the level of a constitutional violation."  See Smith, 316 F.3d at 184.  In certain situations, however, "instances of

medical malpractice may rise to the level of deliberate indifference[,] namely, when the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces a conscious disregard of a substantial risk of serious harm." Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks and citation omitted).

With respect to the first component of the deliberate indifference test, although the defendants state that they do not concede that the plaintiff has satisfied his burden of demonstrating a sufficiently serious medical need, they have chosen to address only the subjective component of the test. See Def's Mem., ECF No. 63-1, at 13-14.

In delay of treatment claims, the focus is on the reason for the delay and whether the delay worsened the plaintiff's condition. Smith, 316 F.3d at 186. "[I]n most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." Id. at 187 (citations omitted).

The plaintiff states in his affidavit that the hernia grew progressively larger over time. It initially appeared as a small blister with no protrusion and grew until the protrusion was the size of a small loaf of bread. The plaintiff experienced severe pain after eating and had to push the protrusion back into his

abdomen to obtain temporary relief from the pain.  See Pl.'s
Aff., ECF No. 117-2, ¶¶ 26, 29-34.  Clearly the delay in
treatment worsened the plaintiff's condition.  As the defendants
provide no evidence to the contrary, the court assumes for
purposes of the instant motion that the plaintiff's hernia
constitutes a serious medical need.

### 1.  **P.A. McCrystal**

The defendants contend that the plaintiff misunderstands
P.A. McCrystal's role and assumed that he was in a position to
provide treatment for the plaintiff's hernia.  They argue that
P.A. McCrystal was entitled to rely on Dr. Pillai and other
doctors to provide the plaintiff's primary medical care.

P.A. McCrystal was treating the plaintiff in the chronic
case clinic during the relevant period.  He told the plaintiff
that he was treating him at the clinic only for diabetes and
told the plaintiff to seek treatment for his hernia from the
doctor.  The plaintiff contends that P.A. McCrystal should have
treated all his complaints.  The chronic care clinic, however,
is intended to treat conditions such as diabetes, hypertension,
and pulmonary conditions.  Department of Correction
Administrative Directive 8.1, Section 6(M),
https://portal.ct.gov/DOC/AD/AD-Chapter-8 (last visited Jan. 15,
2019).  Primary care is provided through the sick call
procedure.  Id., Section 6(A).

The plaintiff concedes that he saw Dr. Pillai 12 to 15 times during the relevant period. He also saw Dr. O'Halloran. As the plaintiff was seeing these doctors for primary care, P.A. McCrystal's direction that the plaintiff should raise his concerns about his hernia with his primary care providers does not evidence an understanding of and disregard for a substantial risk that the plaintiff would suffer serious harm if P.A. McCrystal did not treat his hernia.

The plaintiff also contends that P.A. McCrystal failed to note the problem with his abdomen on the clinic treatment reports. The plaintiff submits eight reports completed or approved by P.A. McCrystal, dating from April 22, 2013 through August 5, 2015, all of which note no abdominal issues or leave the box empty. Two reports note complaints of hemorrhoids. See Pl.'s Mem. Ex. 7, ECF No. 117-8. The July 22, 2013 report noted an abdominal hernia but checked the box indicating a normal abdomen. Id. at 11. The ninth report, completed on November 5, 2015, indicated an abdomen that was not normal because of a healing surgical scar. Id. at 3. While the reports include a section for the results of a physical examination, the plaintiff provides no evidence that the reports were used for anything other than a record of the plaintiff's diabetes. For example, the plaintiff presents no evidence suggesting that his primary care providers declined treatment based on these reports. The

court concludes that any failure to conduct a full physical examination and accurately report the results on the form constitutes, at most, negligence which is not cognizable under section 1983.

Finally, the plaintiff stated in his deposition that P.A. McCrystal said he would put the plaintiff in for a doctor's appointment. The plaintiff submitted medical records showing that, on January 22, 2014, P.A. McCrystal noted that he saw and examined the plaintiff in the clinic and requested a doctor appointment in response to the plaintiff's complaints that the medical unit was not helping with his hemorrhoid issue. ECF No. 117-6 at 7. Thus, P.A. McCrystal appears to have done what he said he would do. Moreover, as the plaintiff's hemorrhoids are not at issue in this case, this allegation is not material to the sole remaining claim in this case.

Therefore, the defendants' motion is being granted as to the deliberate indifference claim against P.A. McCrystal.

2. **H.S.A. Lightner**

The plaintiff contends that, as the director of health services, H.S.A. Lightner should have ordered the doctor to examine and treat him and should have requested a surgical consult. See ECF No. 117-3 at 67. However, H.S.A. Lightner is not the director of health services and has no authority to order the doctors' actions or request consultative services.

See Lightner Decl., Defs.' Mem. Ex. 6, ECF No. 63-8, ¶¶ 3-9.
The plaintiff concedes in his Local Rule 56(a)2 Statement that
H.S.A. Lightner is not the director of health services.  See ECF
No. 118, ¶ 21.

The plaintiff also submits a copy of the UConn Health
Correctional Managed Health Care Policy and Procedures
describing the responsibilities of the Facility Based
Utilization Review Case Manager.  See ECF No. 117-5 at 11-20.
However, he submits no evidence that H.S.A. Lightner occupied
that position.  Thus, there is no evidence that she had those
responsibilities.

When asked during his deposition to explain his claim
against H.S.A. Lightner, the plaintiff stated that, although
H.S.A. Lightner responded to his written requests, she did not
follow-up and ensure that he was receiving proper treatment. See
ECF No. 117-3 at 68, ll. 7-15.  The plaintiff also stated that
he kept all responses from H.S.A. Lightner.

> Do you remember how many responses you received
> from her?
> A.   I do not.
> Q.   Do you think it was more than 10?
> A.   I do not recall.
> Q.   Okay. Did you save them all?
> A.   I save everything.
> Q.   And obviously when I say "responses." I mean
> written responses.
> A.   I save everything.

ECF No. 117-3 at 57, ll. 2-11.  The plaintiff submits only three

responses signed by H.S.A. Lightner, all of which were submitted after the plaintiff was approved for the surgical consult and hernia surgery.  On November 5, 2014, the plaintiff submitted an Inmate Request Form to H.S.A. Lightner complaining that P.A. McCrystal had told him that he was in the clinic to treat the plaintiff only for his diabetes and would not look at his file to address issues unrelated to diabetes.  H.S.A. Lightner responded that the plaintiff had been seen and evaluated by the doctor on December 22, 2014.  She assumed that at the doctor visit, the plaintiff would have had an opportunity to address his issues.  ECF No. 117-7 at 6.

The plaintiff submitted a second request to H.S.A. Lightner, as the Director of Medical Services, on January 8, 2015.  The plaintiff complained that his hernia surgery had not been scheduled and the area was sore and painful.  H.S.A. Lightner referred the plaintiff to sick call to have his medical needs addressed.  See id. at 28.

The plaintiff submitted the third request to H.S.A. Lightner on October 12, 2015, after his hernia surgery, seeking an accommodation regarding handcuffing during transport.  H.S.A. Lightner consulted the doctor and obtained an accommodation for the plaintiff.  See id. at 27.  The plaintiff's medical records confirm that, in October 2015, in response to an ADA request submitted by the plaintiff, H.S.A. Lightner consulted the on-

15

call doctor and obtained a new order regarding alternative handcuffing for one week. See ECF No. 117-6 at 10.

Although the plaintiff submitted copies of other requests, none of them were addressed to or responded to by H.S.A. Lightner. The plaintiff has submitted no objective evidence showing that he informed H.S.A. Lightner of his medical concerns at any time before he was scheduled for the surgical consult and surgical procedures. Thus, there is no evidence showing that H.S.A. Lightner was aware of and disregarded a serious risk to the plaintiff's health before he was scheduled for the surgical consult. Considering the plaintiff's deposition testimony that he saves everything and the lack of any objective evidence that H.S.A. Lightner received and responded to any requests regarding treatment for the hernia prior to approval of the URC request, the plaintiff's general statements that he complained to her are insufficient to create a genuine issue of material fact regarding the subjective component of the deliberate indifference test.

Therefore, the motion for summary judgment is being granted as to the claim against H.S.A. Lightner.

### 3. **Dr. Pillai**

The plaintiff argues that Dr. Pillai should have listened to his complaints, examined his abdomen, and treated him sooner. See ECF No. 117-3 at 66. The defendants contend that Dr. Pillai

had no subjective knowledge of a serious medical need and the plaintiff merely disagrees with the treatment that was provided.

The plaintiff submits medical records showing that, on May 13, 2013, he complained of a protrusion in his stomach. The nurse noted a little swelling and referred the plaintiff's chart to the doctor. See ECF No. 117-6 at 3. The plaintiff requested a doctor visit for his hernia on May 28, 2013. His chart was again referred to the doctor for review. See id. at 2. On July 12, 2013, Dr. O'Halloran noted a small midline abdominal hernia and prescribed an abdominal binder. See id. at 9. On September 12, 2013, Dr. O'Halloran again noted a midline abdominal hernia. See id. at 8. The plaintiff was again seen in the medical unit for his hernia on November 8, 2013. He reported that the hernia had grown and complained of discomfort. See id. On December 12, 2013, the plaintiff asked to see a doctor about his worsening hemorrhoids and his hernia. See id. at 7. Dr. Pillai examined the plaintiff on April 25, 2014 in response to his administrative remedy request and requested a surgical consult for hemorrhoids and the hernia. See ECF No. 117-7 at 17-18; ECF No. 117-9 at 5. Following the surgical consult, the surgeon determined the order and scheduling of the surgeries. Dr. Pillai was not involved in those decisions.

Dr. Pillai states in his declaration:

Regarding plaintiff's abdominal hernia, including

discomfort and pain related to that condition,
throughout the period ranging from 2013 through 2015 I
believed that care regarding or impacting Harnage's
abdominal hernia was medically appropriate, especially
considering the risks that come with surgery, the
possibility that surgery would not be necessary,
plaintiff's other medical concerns, medication that
could alleviate or reduce discomfort or pain
(including Motrin, Tylenol, Ibuprofen, and Neurontin),
and the abdominal wrap provided by Dr. O'Halloran in
July 2013.

Pillai Decl., Defs.' Mem. Ex. 4, ECF No. 63-6, ¶ 12.  The

plaintiff stated in his deposition that, every time he saw Dr.

Pillai, he tried to go through his entire list of medical

complaints.  Dr. Pillai would entertain only a few at any visit.

See ECF No. 117-3 at 61-62.

The plaintiff states that Dr. Pillai examined his abdomen

for the first time at the April 2014 appointment when he

submitted the URC request for surgical consult.  Pl.'s Aff,

Pl.'s Mem. Ex. 1, ECF No. 117-2, ¶¶ 140-43.  The medical records

submitted by the plaintiff, which do not include any record of

an examination of the plaintiff's abdomen by Dr. Pillai, support

this assertion.

Considering Dr. Pillai's declaration, his actions could be

considered negligence in the form of medical malpractice.  As

explained above, however, malpractice can rise to the level of

deliberate indifference if the doctor's actions show a conscious

disregard of a substantial risk of serious harm.  The evidence

submitted by the plaintiff regarding his repeated complaints

about the pain and worsening condition of his hernia and Dr. Pillai's conclusion that the plaintiff was being treated properly without any examination create an issue of fact as to whether Dr. Pillai consciously disregarded a substantial risk of serious harm.

The defendants characterize the plaintiff's claim as a disagreement over treatment. Inmates do not have a constitutional right to their treatment of choice. <u>Dean v. Coughlin</u>, 804 F.2d 207, 215 (2d Cir. 1986). Mere disagreement with prison doctors about what treatment is appropriate will not rise to the level of an Eighth Amendment violation so long as the treatment provided is adequate. <u>Chance</u>, 143 F.3d at 703; <u>see also</u> <u>Hernandez</u>, 341 F.3d at 146-47 (summary judgment appropriate where deliberate indifference claim based on delay in providing risky treatment).

The judgment of prison doctors is presumed valid unless the prisoner provides evidence that the decision was "such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible actually did not base the decision on such judgment." <u>Nails v. Laplante</u>, 596 F. Supp. 2d 475, 480 (D. Conn. 2009) (quoting <u>White v. Napoleon</u>, 897 F.2d 103, 113 (3d Cir. 1990))(internal quotation marks omitted).

Here, the plaintiff argues that no treatment was provided;

Dr. Pillai did not examine his abdomen until April 2014.  In his declaration, Dr. Pillai claims that he believed that the conservative treatment, including the abdominal wrap, was appropriate.  That wrap was provided in July 2013 by another doctor.  Dr. Pillai does not aver that he inquired or examined the plaintiff to ensure that the abdominal wrap was effective or determine whether any other treatment was required.  Absent evidence that Dr. Pillai undertook some examination or provided some treatment to support his medical judgment, the court cannot determine whether Dr. Pillai acted in accordance with accepted professional standards.  Thus, the court cannot conclude that the claim is merely a disagreement over treatment.

Finally, the defendants contend that the plaintiff has not disclosed an expert witness to testify that Dr. Pillai's actions caused the plaintiff's injuries.  Specifically, the defendants argue that the plaintiff has not established through expert testimony that absent Dr. Pillai's inaction, he would have obtained treatment sooner or quantified any harm caused by the delay.

The plaintiff is asserting a claim for deliberate indifference to serious medical needs, not medical malpractice.  His argument is based on the lack of treatment; he argues that Dr. Pillai failed to examine his abdomen and seek a surgical consultation for over a year despite his many complaints.  Thus,

as the quality of the plaintiff's medical care is not the primary issue, no expert testimony is required.  See Griffith v. Hofmann, No. 2:05CV126, 2008 WL 4682690, at *8 (D. Vt. Oct. 21, 2008).

Therefore, defendants' motion is being denied as to the claim against Dr. Pillai.

### C.  **Qualified Immunity**

The defendants argue that they are protected by qualified immunity.  Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Qualified immunity "affords government officials 'breathing room' to make reasonable—even if sometimes mistaken—decisions."  Distiso v. Cook, 691 F.3d 226, 240 (2d Cir. 2012) (quoting Messerschmidt v. Millender, 565 U.S. 535, 553 (2012)).  "The qualified immunity standard is 'forgiving' and 'protects all but the plainly incompetent or those who knowingly violate the law.'"  Grice v. McVeigh, 873 F.3d 162, 166 (2d Cir. 2017) (quoting Amore v. Novarro, 624 F.3d 522, 530 (2d Cir. 2010)).

Qualified immunity should be denied to an official only if (1) the facts alleged or shown by the plaintiff state a

violation of a statutory or constitutional right by the official and (2) the right was clearly established at the time of the challenged conduct.  See Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (citation omitted).  The district court has the discretion to determine, in light of the particular circumstances surrounding the case, which of the two prongs of the qualified immunity standard to address first.  See Johnson v. Perry, 859 F.3d 156, 170 (2d Cir. 2017) (quoting Pearson, 555 U.S. at 236).

The plaintiff has a constitutional right to medical treatment for a serious medical need.  Under the second prong of the test, that right is clearly established if, "at the time of the challenged conduct ... every 'reasonable official would have understood that what he is doing violates that right.'"  al-Kidd, 563 U.S. at 731 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  There is no requirement that a case which is directly on point have been decided, "but existing precedent must have placed the statutory or constitutional question beyond debate."  Id.  "[A] broad general proposition" does not constitute a clearly established right.  Reichle v. Howards, 566 U.S. 658, 665 (2012).  The constitutional right allegedly violated must be established "in a 'particularized' sense so that the 'contours' of the right are clear to a reasonable official."  Id. (quoting Anderson, 483 U.S. at 640).  Recently,

the Supreme Court addressed the issue of qualified immunity and stated that "it is again necessary to reiterate the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" White v. Pauly, ___ U.S. ___, 137 S. Ct. 548, 552 (2017) (quoting al-Kidd, 563 U.S. at 742); see also City of Escondido v. Emmons, ___ U.S. ___, 2019 WL 113027, at *2 (Jan. 7, 2019) ("Under our cases, the clearly established right must be defined with specificity. 'This Court has repeatedly told courts … not to define clearly established law at a low level of generality.'" (quoting Kisela v. Hughes, 584 U.S. ___, 138 S. Ct. 1148, 1152 (2018) (per curiam))). "As this Court explained decades ago, the clearly established law must be 'particularized' to the facts of the case." White, 137 S. Ct. at 552 (citing Anderson, 483 U.S. at 640). The legal principle at issue must clearly prohibit the officer's conduct in the particular circumstances before him. District of Columbia v. Wesby, ___ U.S. ___, ___, 138 S. Ct. 577, 590 (2018).

The defendants contend that the plaintiff's right to medical care for his hernia was not clearly established because there are no Supreme Court or Second Circuit cases holding that he had a right to treatment under the facts in this case. Thus, no defendant would have understood that his or her actions violated that right.

There are no cases considering the obligation of a treatment provider in a specialty clinic with respect to medical complaints for conditions that are not treated in that clinic. Thus, P.A. McCrystal would not have understood that referring the plaintiff to the doctor the plaintiff saw through the sick call procedures for other issues violated the plaintiff's constitutional rights. In addition, the court has concluded that the plaintiff failed to present evidence showing that H.S.A. Lightner was on notice of his claims at any time prior to approval of the surgical consult. Absent evidence of such knowledge, there is no basis for her to understand that her actions violated the plaintiff's constitutional rights. Thus, P.A. McCrystal and H.S.A. Lightner also would be protected by qualified immunity.

With respect to the claim against Dr. Pillai, the defendants argue that there is no precedent from the Supreme Court or the Second Circuit addressing treatment of an abdominal hernia, which is at issue in this case. The plaintiff contends that a case involving an abdominal hernia is not required when the claim asserted is for lack of any treatment rather than a disagreement about the conservative treatment. The court agrees that the denial of treatment for a serious medical need is a constitutional violation regardless of the nature of the serious medical need. Thus, the motion for summary judgment on the

ground that Dr. Pillai is protected by qualified immunity is
being denied.

D. **Request for Injunctive Relief**

Finally, the defendants contend that the plaintiff's
requested injunctive relief is barred by 18 U.S.C. § 3626. The
plaintiff includes the following request in the prayer for
relief in his amended complaint: "An order of injunctive relief
commanding the defendants to institute better practices,
policies, and procedures for receiving, documenting, and
recording, handling and monitoring the receipt and responses to
inmate requests and Health Services Reviews for inmate medical
needs." Am. Compl., ECF No. 23 at 11, ¶ 58(c).

Section 3626(a)(1)(A) provides:

> Prospective relief in any civil action with
> respect to prison conditions shall extend no
> further than necessary to correct the violation
> of the Federal right of a particular plaintiff or
> plaintiffs. The court shall not grant or approve
> any prospective relief unless the court finds
> that such relief is narrowly drawn, extends no
> further than necessary to correct the violation
> of the Federal right, and is the least intrusive
> means necessary to correct the violation of the
> Federal right. The court shall give substantial
> weight to any adverse impact on public safety or
> the operation of a criminal justice system caused
> by the relief.

The plaintiff seeks a complete revision of procedures
applied at MacDougall relating to medical requests and
grievances of all inmates in the facility. However, this relief

25

relates only to the claim against one defendant, H.S.A. Lightner. As the plaintiff as presented no evidence showing that H.S.A. Lightner was aware of his complaints prior to the URC approval, this request is not narrowly tailored. In addition, the requested relief will adversely impact the operation of the correctional facility.

Therefore, the defendants' motion for summary judgment is being granted as to the request for injunctive relief.

## IV.    **CONCLUSION**

The defendants' motion for summary judgment [ECF No. 63] is hereby GRANTED in part and DENIED in part. The motion is granted as to the claims against defendants H.S.A. Lightner and P.A. McCrystal and the request for injunctive relief, and it is denied as to the claim against Dr. Pillai. The case will proceed to trial on the claim for damages against Dr. Pillai for deliberate indifference to the plaintiff's need for treatment of his hernia.

It is so ordered.

Signed this 24th day of January 2019 at Hartford, Connecticut.

_____/s/AWT_____
Alvin W. Thompson
United States District Judge